Walmart v. OSHC Good morning, my name is Steve McCallum and along with Ron Taylor sitting at the Council table we represent Walmart. This is a petition for review of a decision by the Occupational Safety and Health Review Commission concerning compliance with a specific performance standard in how a company like stores and provides personal protective equipment. The big difference between the two parties, the government and Walmart, is that Walmart does a global assessment because all of their distribution centers are basically the same and they have the same jobs. This is an order-puller job. And the government says that- So how can you really know if each place is the same until you go and you actually look at how it's functioning? Because of the fact that, as a matter of efficiency, Walmart has 120 distribution centers and in the order-pull section, for example, the record shows that the jobs are exactly the same and the hazards are exactly the same and they do the same thing. The way Walmart and a lot of big stores that, for example, are represented by the amicus make money is they have cost-efficient systems and those systems then have a point of sale operations. Whenever you buy something at a Walmart store, it goes to a distribution center and an order-puller pulls it off the shelf to restock. Now, the problem with a walk-through, which is what the government wants, an on-site walk-through of every particular distribution, is that if you walk through a static situation in a distribution center, you may or may not pick up all of the- You mean when nothing's happening, when nothing's being distributed? Yes, ma'am. That's it. All the equipment's off. Could be. Or it could be that they are lifting things or pulling things that are not heavy. It could be that they're doing stuff that is different. So you have to have a global assessment of what is going on in these distribution centers to be able to understand the overall need for personal protective equipment. What does that mean? All the equipment's functioning as required while you do your global assessment? The global assessment was actually done in Searcy, Arkansas. And what they did was they went through, they built this new distribution center. They're very, very large. And they engineered, they have 13 miles of conveyor belt systems, and they have safety rules and procedures in place for all the particular jobs. They have a hazard assessment that assesses what everybody's doing and what they need to have. For example, in this case, in addition to the procedural issues, there were three citations issued to Walmart and New Brunswick for failure to have face and eye protection, foot protection and hand protection. And the commission vacated all three because the commission found that they had done what they said they had done. So that seems to be almost backwards to what they're saying is happening here. What happens when conditions vary from workplace to workplace? I think it's acknowledged by Mr. Trustee, who's Walmart's Logistics Division Safety and Environmental Director. He acknowledged in his deposition that conditions can, in fact, vary. And that's perhaps the reason why you would want to do an individual workplace assessment. Conditions can vary, but they vary in a domino effect. For example, if Walmart buys new machines, they buy them everywhere. And they implement them. And they train on them. And they assess the hazards. Or if they have a different way to pull orders and say they need to have a different kind of protection. They learn from what they do when they implement the engineering part of it and the administrative part of it. And they implement it at every other store. And the reason they do that is not only because of the company. This isn't a case about Walmart not providing a safe and healthy place to work. They employ a million people, more or less. And I think they do a pretty good job of trying to keep people from being injured and being able to go home at the end of the day. There's nothing in the record about that. But we kind of all know that it's one thing to have a corporate policy and a corporate training manual that comes from Bentonville, Arkansas, or whatever. And another thing to know that that's being implemented in San Diego, California, and Miami, Florida, and Bangor, Maine, and wherever else. Well, Walmart makes sure that it's done that way. How do they make sure without doing an on-site assessment? Well, they do have... Calling up and saying, hey, is everybody wearing their gloves? Oh, yeah, we're wearing our gloves, ha, ha, ha, you know? How do you know without the on-site assessment? Because they have a complete system of what they call asset protection managers. And as Mr. Trustee testified, unchallenged in the record, they do routine audits. They do on-site visits. And one of the things they do is that they make sure that this overall global assessment for hazard... We're only talking about one thing here, personal protective equipment. But they do it for everything, Your Honor. From conveyor belt protection to PASCOM issues to everything else that goes into a large working area like this. So if the OSHA approach is implemented, what difference does that make to what you're doing? You said you're already doing audits, but you're not doing a global... You're not doing an individual assessment. What difference is it going to make to Walmart if you have to follow what OSHA says the rule is? Well, first of all, I think it was very well pointed out in the amicus brief where the frailties of that is. Number one, companies this large that have this much invested and this many employees, they want professionals that are taking care of these issues. Yes, they want input from the workers themselves, but they want to have a control over this. They want to be able to say that we have the same safety standards in every single facility because we know what works and what doesn't. They monitor this all the time. One of the ways they monitor it is that there's a thing called a 300 log where you have to report reportable injuries. They have people... That's what they do. If they see a spike, for example, let's say that the order pullers have a spike right now. They don't have some kind of personal protective equipment like footwear, and all of a sudden we see a lot of foot injuries. Well, they're going to go out and check that out, and maybe they change it. It's a process that goes forward. That's not an answer to my question. If the rule as argued here by your opponent is actually implemented at Walmart, what difference does that make? What will change? What is different? Well, I don't think it would change anything except for the fact that we're dealing with the question of law when you're talking about changing the rule because it's a performance standard. That gets into whether it's ambiguous or not, and the Chevron deference, which is another part of what we can discuss this morning if the court wishes to. Wouldn't you have to have more inspections at all of your other stores rather than just this global assessment? You would have to put boots on the ground in every store. That's what I'm asking. Yes, ma'am. And they could do that. You're making the argument that how could I know that I needed to do that because one of the aspects here is notice. Even if we accept that their view of this rule is reasonable, then there's the question of were you on notice for purposes of whether you should have been fined or not. And I'm trying to understand why you wouldn't have thought this was the way to go and what's different with what they're saying you should do and what you actually do and why can't you do it. Well, that really, if I may talk about another part of my argument real quickly, there's two types of standards in OSHA world. There's prescriptive standards, which are mandatory. If you work four feet off the ground, you have to have fall protection. There's no leeway there. And then there's performance standards, and performance standards are necessary for OSHA because there's four million workplaces and there's probably four million different workplaces. We're talking about 120 distribution centers. Yeah, somebody that has two facilities, they may be different and they need to go and check them. They may not be able to do a global assessment with the resources that Walmart or Target or some of these other large companies do. But the prescriptive standards say you've got to do it, the performance standards say this is the goal, protect against hazards with PPE, and you figure out the best way. As a matter of fact, if you look at this preamble that they quote so much in this case, the employer is generally in a better situation to know what the hazards are going to be in the workplace. And they do know because in Searcy, Arkansas, they knew there was hazards and they provided the same PPE requirement in New Braunsvilles, and that was a program in Searcy, Arkansas that was actually blessed by OSHA in this STAR program called Voluntary Protection. So if we affirm here, what is Walmart going to do differently? Nothing. Okay, so they're not understanding why we're here. Because the government- But they're essentially saying you did comply then. We believe we complied with the standard. But it's their- No, I know, because you did the global assessment, and they're saying you can't do a global assessment. So if they're right, I mean, they're the appellee here. If we affirm, they win global assessment in good enough. So then what are you going to do differently? Well, then you have a performance standard that's been changed by enforcement, not by rulemaking. Okay. And a rulemaking procedure would allow all these businesses and RILA, the association, to come forward and say, this is why we think this is wrong. This is why it doesn't work. I get all that. That won my question. If you affirm, you're saying you wouldn't do anything differently, and yet you're being fined for not having done an individual assessment. Oh, I misunderstood. If the standard is still in place, yes, to comply with the standard, they will have to do something different. Well, by affirming here, aren't we saying that their view of the existing rules is correct? You're saying that the, basically, you're the ruling that this particular standard and their interpretation of it is a reasonable one, is reasonable under the law, and basically you're saying. And therefore, now you would be on notice. You couldn't argue no notice, okay? And so then it would seem like you should then go do an individualized assessment and start getting fined a lot. That's correct. Am I missing something? No. Okay. I misspoke. But what the problem is, is that this is a performance standard, and we have a lot of these standards that give employers leeway in how to do things. And they're coming in and saying, well, maybe in this area we don't think that you need to do it. And it changes the burden of proof. I would think that if OSHA was going to try this case again, they probably would have put on testimony to show that Searcy and New Brunswick were different. They didn't do that. They chose not to do it. Are they different? Are they different? Mr. Trustee testified that they were not. That's in the record. Was there any notice before you received the citation? Had you received any complaints or citations in other stores before this? As to? As to OSHA complaining about this global hazard assessment, rather than an individual inspection at every distribution center. No. As a matter of fact, one of the things that's interesting about this case is if you look at the cases that are cited by OSHA, by the Secretary of Labor, there really is not. This is, I hate to call it a case of first impression, but there is no issue that you can point to except for that one case that we pointed to in Michigan, which is a state court proceeding, where there's been the same issue that's been teed up. How long has this been going on, functioning Walmarts with the global assessment only, not the individual assessment? I'm not sure that that's in the record, Your Honor, as far as how long it's been going on. This case has been going on since 2008. I'm just curious as to how long OSHA let this go on before they gave you a citation. Well, they were certainly on notice of it when they did the Voluntary Protection Program audit in Searcy, Arkansas, because the testimony is unchallenged in the record that OSHA was told by the company that they used this as a global assessment for all the other distributions. What year was that? That was in 2006, and again in 2008. Was that when they were doing the walkthrough of one of the facilities, and wasn't it Mr. Trustee that advised OSHA that the cookie cutter or global approach was being utilized in all the centers? It was either Mr. Trustee or someone else on the team that was working with OSHA in Searcy, Arkansas. They do a very, very detailed evaluation of the facility before they'll give out the VPP STAR Program. The global assessment was in the same assessment, the same PPE hazard assessment was done in the order pullers was the same as it was in New Brunswick. Searcy was Fairly soon after learning of this global assessment, you did get the citation. It's not like this went on for years. We got the citation in 2008, I believe, and the hearing was in the spring of 2009. Right, but I mean, you said they first, they being OSHA, first learned of this global assessment in 2006 when they did this walkthrough in Searcy to give this STAR rating or whatever it's called. Formally, formally they learned of it, but they've been inspecting Walmart stores for years, and I don't believe, I haven't checked this, but I do not believe the record shows that Walmart's ever been cited for this before, or we would have gotten a repeat citation. I'll save the rest of my time for the vote. All right. All right. Mr. Gladman. May it please the court. The commission's final order should be affirmed for two reasons. First, because the cited provision requires an on-site assessment of the hazards at a particular workplace. Second, because the Searcy Center global hazard assessment was not a compliant hazard assessment of New Braunfels Center because Walmart did not verify that working conditions at the two centers were the same. Starting with my first reason concerning the requirements of the cited provision, the plain language of the cited provision requires an employer to assess the workplace to determine if hazards are present or likely to be present, which necessitate the use of PPE. Can you tell us practically if they've designed these things exactly the same and they've said, okay, this guy's going to be handling something acidic, so we'll give them gloves that protect their hands, I'm just making this up, and that's the same kind of acidic substance they're handling in New Braunfels, we're going to give them the same gloves, why isn't that good enough? Because working conditions can change even at plants that have identical specifications and involve the same job duties. How often would these inspections have to be made? I mean, if the gloves are rotten or they're not there, what kind of a burden are you putting on the Walmart to follow up with these kind of inspections? I think it would just be a reasonable employer standard, which is usually the case. Reasonable? Reasonable employer. Where a standard does not give... A whole bag. I mean, these people are fighting a notice that they didn't have... Right, right. Apparently didn't... Fighting a citation they claimed they didn't have adequate notice for. I'll address that. Leaving it to them to be reasonable. Right. I'll address the notice issue separately, but to respond to the question that you just asked, where a standard does not give a specific requirement as to frequency, the commission and the courts generally have applied a reasonable employer standard to determine what would be reasonable under the circumstances, what a reasonable employer would do in those circumstances. The cited provision doesn't say anything other than a hazard assessment shall be done of the workplace. So that means at least one hazard assessment has to be done. Now, as far as the notice requirement is concerned... It never has to be repeated? We're not saying that. But I think it really depends on how... That's what I'm asking you. How often do these people have to do this? The standard does not give an answer to that question. There's a problem with the standard. Well, again, as I said, I mean, if the employer doesn't do anything and just lets things deteriorate, I think a reasonable employer would not treat the plant that way. A reasonable... That's not the situation here. You heard that. Well, the situation here, Your Honor, is that no on-site assessment at all was done. But is there any evidence that there was a problem at New Braunfels that wasn't revealed by a Searcy inspection? There is no evidence because Walmart did not do anything that would have gathered the information necessary to determine... Isn't it your burden? You're the ones that issued the citation to show that... I mean, this sounds extremely theoretical, like there might could have been a problem, but you haven't identified that, yeah, over in New Braunfels, they're not wearing any gloves or foot protectors, even though over in Searcy they are, and anybody who walked around there would have seen that. Yeah, but that's not completely true, Your Honor. There is evidence in the record that there were hazards here, that there were eye and face hazards, that there were hand and foot hazards, there were injuries that were recorded on Walmart's records. Now, it is true that the commission vacated... Yes, there was no PPE at New Braunfels. Now, for order fillers, which was the job... And there was at Searcy? So you're saying there was a difference? No, I'm not saying that. I'm saying that at Walmart, at all the centers of Walmart throughout the country, no PPE was used for order fillers. But that's not the question that we're dealing with here. I thought we were down to a citation for a failure to do an individualized assessment at New Braunfels, and not that John over here didn't have gloves, but rather that you didn't do an assessment of whether John needed and had gloves. Yes, I was just answering the question about the hazards, and what I was saying is... Yeah, but it seems to me for your point to have any value, you would have to show that Searcy and New Braunfels are different. If all the 120 places are lacking gloves because Walmart just hasn't put a glove requirement in place, that to me is a separate inquiry from saying you put the glove requirement in Searcy, but over at New Braunfels, they're just running them up without any gloves, and you didn't figure that out because you didn't do an individualized assessment. Well, what we're saying is that all the centers require on-site inspections, because that's the only way that the employer can determine if the working conditions are safe. Now, as I was saying earlier, working conditions can change at different centers, and they can vary from center to center. How do they change if you've got identical buildings handling, let's just use my silly example of the acidic substance. Everybody's handling the same acidic substance in the same exact blueprint facility. Why would the need for gloves exist in one and not the other? Because individual plants can have bad maintenance, bad housekeeping, processes can change, the personnel can change, the way of doing things can change, and the level of training can drop as well. Now, all of these things are things that cannot be determined unless a walk-through inspection is conducted. Okay. Let me ask you about notice then. Yes. Even if we were to accept that OSHA's construction of this set of rules is a reasonable one, how was Walmart on notice of this construction until they got the citation? Through the plain language of the cited provision, through which, as I said earlier Maybe that language that you think is so plain. It requires an employer to assess the workplace to determine if hazards are present or likely to be Can't the workplace be interpreted by Walmart to mean if they do one global inspection, all the other centers are identical, that that would suffice? Well, your honor, that's a difficult interpretation to maintain in light of the other aids to construction of the standard. You're referring to the appendix? Not just the appendix, but also the preamble. The preamble to the final rule clarifies that employers must assess the hazards of a particular workplace to determine whether PPE is required. Maybe the language in the preamble that you think is so clarifying. Well, what I said is virtually a direct quotation. It's a very close paraphrase. In other words, it specifies that employers must assess the hazards of a particular workplace. Right. A particular workplace. A particular workplace. But that's not all, your honor. A particular could be one, not all. Well, but it can't be a global assessment. I mean, there is an unmistakable Well, it's not terribly unreasonable. And you're relying on reasonable. Yes. Well, I mean, I think the standard would have been worded differently had that been the intent. For instance, an earlier version of the standard, the proposed rule, referred to generic tasks and not a particular workplace. In other words, the inspection was supposed to be of the generic task. And this is discussed in the brief. But there are other aids to construction that also lead to the same conclusion. For instance, Appendix B, which Judge Marmolejo just mentioned, which is noted in the cited provision, gives an example of a compliant hazard assessment that involves a walk-through survey of the areas in question, observing the sources of the hazards. And then furthermore, another part of that same provision, the written certification requirement of Section 1910.132.D2, requires the employer to verify that the hazard assessment was done and to identify the workplace evaluated. Now, although this provision was not cited, it is nevertheless an interpretive tool that indicates that the SEERC global assessment was not a compliant hazard assessment. And there's a further reason for thinking that OSHA's interpretation is correct. And that is the purpose of both the standard and the statute. The cited provision serves the PPE standards and the OSHAC's purpose of assuring that all U.S. workers are given safe and healthful working conditions at their places of employment by reducing hazards in the workplace. Now, opposing counsel in his argument asserted that OSHA failed to give Walmart notice of this requirement when it approved Walmart for its VPP programs. And we don't accept opposing counsel's assertion. First of all, SEERC's admission into these programs gave the center written notice that it was required to conduct comprehensive on-site surveys of its workplace. Furthermore, there's no evidence that when SEERC told OSHA that it was doing global assessments, that it also told OSHA that this global assessment wasn't based on an on-site inspection of SEERC. And that really gets to the nub of the matter here. What we're saying is that for there to be any legitimate global application of hazard assessment, there has to have been some on-site inspection somewhere. Walmart here did this SEERC global assessment on the basis of comparing specifications of the plants at the different centers and job duties. There is no evidence in the record that Walmart ever went through any center on an on-site basis to do a walk-through hazard assessment of that plant. So, therefore, when SEERC gave OSHA this notice, it wasn't telling OSHA that the global assessment it was using wasn't based on any on-site inspection anywhere at all. Furthermore, there is no evidence in the record that OSHA ever said to the Walmart officials at SEERC that it was okay for Walmart centers to use global assessments. Well, but do you contest that they, in fact, were notified, that Walmart did notify you that this is the approach that they were utilizing? But as I was saying, the nature of the notice was not specific enough. It didn't indicate that there was no on-site inspection on which these global assessments were based. Now, the commission made a finding that under certain circumstances, a global assessment could be acceptable. But those would be circumstances only where the centers in question had identical conditions. And the point I'm making now is that there was no on-site survey at either center, at either New Braunfels or SEERC, that would enable the global application of a global hazard assessment to be okay. You can't just base an assessment on comparison of plant specifications and job duties without having some basis for knowing what the working conditions were at the two centers that are being compared. And that was not done here. I'm sorry, I thought it was done. I thought the conditions were pretty much identical as far as the work descriptions and the job duties being performed and even the identical equipment. Yes, but that's not what I'm saying. It is true that there was a paper comparison done. In other words, Walmart had specifications of all the 120 centers throughout the country. And what it did was to compare those specifications and say, all right, all of these centers were built, were custom built. They were built to a certain design plan. But there was never at any time a walk-through investigation hazard assessment of any center, of any of the 120 centers in the country. So this... That's not what Mr. McAllen said this morning, and I'm sure he'll correct me if that isn't right. He said there was an on-site walk-through, but the equipment was off. I'm sorry, but the equipment was... Off. Okay, well, there is no evidence in the record showing that an on-site hazard assessment was done at the Searcy Center, let alone the New Braunfels Center. All of the assessments were done on paper at headquarters, and no one walked through any plant. That's correct, Your Honor. Even if you're saying one walk-through would cover the 120, you need at least the one. That's correct, Your Honor. Okay, then how would the one walk-through of Searcy show you that New Braunfels is the same? You were saying you need to show that, but you don't have to do an individualized assessment. So how would you know if they're the same? Because, as the commission found, it would be necessary for Walmart, in this case, to determine that conditions at New Braunfels were the same as those at Searcy, and that was not done here. How would you... Okay, they're saying they don't want to do 120 walk-throughs and that that's inefficient and blah, blah, blah. They should be able to do one global assessment. And you sound like you're saying, yeah, you can do one global assessment, but you have to show that they're the same. They say they have shown they're the same. Look at these blueprints and this and that, and you're saying that's not good enough. What is good enough? An examination of the conditions.  Conditions like it's flooded or there's no oil on the floor. Condition of the pallets, Your Honor, whether they... That's a walk-through. Right, but the point... You're saying you have to do 120 walk-throughs or a walk-through at each of the 120. I think that what the commission had in mind was that the verification walk-through would be less extensive than the initial walk-through inspection on which it was based. You're saying somebody goes to Searcy. They do a thorough thing. This guy needs gloves. This guy needs foot protectors. This guy needs a mask. And then somebody walks through New Bramples and says, are there enough gloves, foot protectors, and masks to cover here? And do these guys generally know what they're supposed to do without reassessing whether the gloves are needed, the footwear is needed, or the mask is needed? That's correct, Your Honor. But if they're all provided the same equipment and they can document they've all been provided the same equipment, then what's the point of going through 120 stores that have all been furnished the exact same equipment and protective gear? Because conditions change, training changes, all of the things that I mentioned... How often... See, that's the whole reasonable standard here. How often do you think these Walmart people are going to do it, and why don't you think they're doing it on a daily basis anyway? I mean, have you ever been in a Walmart when somebody spilled a Coke? It's like they come out the woodwork to clean up the Coke. So, I mean, there's something constantly going on at these stores to maintain safety. Right, but there's no evidence in the record that anything approaching a walk-through inspection is being done, or that it was ever done at any of these centers. Now, I want to return to the evidence for that point. And the SEERC Global Hazard Assessment is in the record as Exhibit R1. And it's instructive that that exhibit does not indicate whether any on-site hazard assessment was done at any center or describe the working conditions at SEERC, but only lists generic PPE requirements for certain non-order filler positions. So, in other words, there is nothing in this so-called Global Hazard Assessment that indicates that any on-site assessment was done at any center. Now, opposing counsel in his argument argued that because the PPE standard is a performance standard, that it wasn't necessary for Walmart to do an on-site inspection. That simply does not follow from the meaning of the term performance standard. What performance-based standard means is the employers have some discretion, in this case, in selecting the appropriate PPE for the work being performed. But that discretion does not give the employer the right not to comply with the requirements of the standard. And that's what happened here. Walmart did not comply with the requirement of an on-site inspection. We give, OSHA gives, employers some leeway in how they're going to comply with standards, but we don't say that anything you do is fine. But the employer still has to comply with the basic requirements of the standard. They were doing that, weren't they? No. In fact, they had your highest evaluation for compliance. I'm sorry? Didn't Walmart have your highest evaluation as far as compliance is concerned? In other aspects of the performance of the plant. But as I said, there is no evidence that Searcy, and that was only the Searcy Center, by the way, there is no evidence that Searcy ever conducted an on-site inspection. Well, but OSHA was notified. Were they not? No. The notice that was given, this was a point I made earlier, the notice that OSHA was given did not say that no on-site inspection was ever made. It did not say that this global hazard assessment that we're applying to all 120 centers was never backed up by an on-site inspection. Had we known that, I think that the result might have been different here in terms of the approval of the program at Searcy. Well, and why didn't you simply ask? Don't you have a duty to ask? I don't know what the particulars of the inspection were beyond what's in the record, and there's nothing in the record about that. Now, the Searcy Center global hazard assessment was not a compliant hazard assessment of the New Brownsvilles Center because Walmart did not verify that working conditions at the two centers were equivalent. And the record demonstrates this point. Walmart's safety director had not personally observed the working conditions in New Brownsvilles before the OSHA inspection. Walmart's corporate management and New Brownsvilles management had not communicated about a hazard assessment at New Brownsvilles. New Brownsvilles' asset protection manager, the only New Brownsvilles official qualified to perform hazard assessments, had no involvement with the Searcy assessment, and the New Brownsvilles managers were unaware at the time of the cited violation that the report... But didn't ALJ find that a hazard assessment was done at Searcy? No, he did not. In fact, what he found was that because Walmart failed to verify conditions at the center, it was not clear whether any hazard assessment at all was done. And that's a finding that the commission picked up and affirmed at page 2 of its decision. All right. Thank you, sir. Okay. Thank you, Your Honor. All right. You need to start right there, Mr. McAllen. The commission's decision is interesting and entertaining, if not for anything but to read the fight in the footnotes between the majority and the dissent. Okay. But was a hazard assessment done at Searcy? Yes. Okay. And where is the evidence of that? The evidence of that is what Mr. Trustee testified to, and I believe it is an exhibit as to the PPE part of the program that was approved in the VPP STAR program. And did the ALJ find that a hazard assessment was done there? It was done at Searcy, not New Brownfields. They did not focus on what was done at Searcy. They focused on what they said was not done at New Brownfields. Not done at New Brownfields. I don't think there's an attack on what's there. There shouldn't be an attack on what's there. Well, because this was new in my head. Maybe it's there. I'm not saying it's not in the briefing. But in my head, I thought there was an assessment done at Searcy, and the dispute was whether that carries over to New Brownfields. Right. But your opponent is saying there wasn't even a hazard assessment done at Searcy, which would mean you lose either way, because clearly you're admitting you need to do a hazard assessment at Searcy before you can apply it to the other. We would have never gotten the STAR program approved by OSHA if we just ignored the PPE hazard assessment part of what has to be done in a facility like that. So there was a walkthrough? Pardon me? There was a walkthrough inspection? Oh, yes, ma'am. At Searcy. Before OSHA came and while OSHA, they show up with a team. While they were there? To get the STAR program, they came and they had like 21 days of investigation with a team from OSHA. That's what I thought this case was about, that you did the assessment at Searcy, but the question is whether that satisfies New Brownfields. But your opponent seems to have thrown this extra little wrinkle in, which would change things dramatically, because if you did no assessment anywhere, then you're in violation rather obviously without a lot of la-di-da, it seems to me. I would agree, and that would be very difficult for me to stand up. The problem is that Searcy didn't get a citation, and New Brownfields didn't get a citation, and Searcy didn't get a citation about this standard called verification. That was not in there. There is some interesting parts of the majority's decision I just want to refer to. Beginning on page 3 in footnote 3, the question of whether Searcy center assessment was sufficient to meet the requirements of the standard relates to the issue of noncompliance, which is part of the Secretary's prima facie case. Then it goes on and says this argument cannot constitute an affirmative defense. Everything the counsel for the Secretary was talking about, this goes to our burden shifting in notice. If they wanted to show that the Searcy assessment did not apply to New Brownfields, it's their burden to do that. It's not Wal-Mart's burden to do that. And they go on on page 4 in the middle of the paragraph of the decision to say, if the Secretary can show the Searcy center assessment did not take into account of the conditions specific to New Brownfields, he will establish Wal-Mart's noncompliance, irrespective of whether under the circumstances there may be an effective substitute for conducting an assessment on site. And I'll submit to you there is no record evidence of even anything that was introduced in the case about what the conditions were in New Brownfields, except for the three citations that we know about face-eye, feet, and hand protection, which were vacated by the commission. So there's just nothing there. The last thing I would like to point out is the dissent in this case by Commissioner McDougall. She closed her dissent by saying, I conclude the Secretary failed to meet his burden to show that the global assessment by Wal-Mart was unreasonable and insufficient to identify hazards at the New Brownfields facility. And I believe that's probably the crux of the case. But she decided in her dissent that, yeah, they could have maybe proved this, but they didn't. And we know we're on an administrative record. I'm not admitting that that would have been a problem, but I didn't think that was my burden of proof. And since we are on a substantial evidence issue kind of thing, there's just no record evidence to support what counsel is saying. If there's no further questions, thank you. All right, thank you, sir. We have your argument.